Andrew THOMPSON, Petitioner-Appellant,

v.

William H. BANNAN, Warden, State Prison of Southern Michigan, Respondent-Appellee.

No. 14518.

United States Court of Appeals
Sixth Circuit.

Feb. 1, 1962.

David N. Gorman, Cincinnati, Ohio, for appellant.

Joseph B. Bilitzke, Sol. Gen. of Michigan, Lansing, Mich., (Paul L. Adams, Atty. Gen., on the brief), for appellee.

Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.

CECIL, Circuit Judge.

This is an appeal from an order of the District Court for the Eastern District

of Michigan, Southern Division, denying the appellant's petition for a writ of habeas corpus. The District Court considered the petition on questions of law and dismissed it without the submission of evidence. We, therefore, look to the petition for a statement of facts.

The pertinent facts are as follows: Andrew Thompson, the appellant, is now confined in the State Prison of Southern Michigan, at Jackson, Michigan. The appellant was arrested in New York City on or about September 9, 1955, on a charge of petit larceny. At this time he was wanted in Michigan for violation of a two and one-half years' parole which had been granted to him on November 1, 1951, and on a charge of armed-robbery committed in Oakland County, Michigan, on November 30, 1953. At the same time he was wanted in Chicago, Illinois, on a murder charge.

The New York police notified authorities in both states of the arrest and advised the Chicago authorities that the F.B.I. had a detainer on Thompson for unlawful flight to avoid prosecution.

He was returned to Michigan and arraigned in the United States District Court, at Detroit. He was given an opportunity to get a lawyer and subsequently the District Court, upon being advised that the Prosecuting Attorney of Oakland County agreed that he be turned over to the Illinois authorities, issued an order surrendering Thompson to the sheriff of Wayne County, Michigan, and dismissing the federal charges.

The appellant through his attorney requested an extradition hearing before the governor. Upon requisition of the governor of Illinois, the governor of Michigan surrendered the appellant to the Illinois authorities. It is alleged that he was held in the Cook County jail for nearly a year, that he was then tried on the murder charge and acquitted.

After this, on November 28, 1956, the prosecuting attorney of Oakland County, Michigan, made request to the governor of Michigan for the extradition of appellant from the state of Illinois. The governor of Michigan made demand on the governor of Illinois and through this procedure the appellant was returned to Oakland County, Michigan. He alleges that, "On his last appearance, in the Criminal Court of Cook County," in the extradition proceedings, "he was told by the Court, that counsel would be appointed to aid him in said matters, and, that he would be heard the following morning, but instead the following morning, officers from the Bloomfield-Hills, Michigan Police Department, took Petitioner into custody, put him in a plane, and flew him back to Michigan." He also alleges that the police officer in Michigan misrepresented the facts in the affidavit for extradition by stating that the appellant was transferred directly to Chicago whereas he was first taken to Michigan and then to Chicago.

In Michigan, counsel was appointed to defend the appellant and he was tried on the alleged armed-robbery charge before the Circuit Court of Oakland County. He was convicted and on February 11, 1957, sentenced to a term of 20-40 years in the State Prison where he is now confined. Upon his commitment he was required to serve out his time for the parole violation, previously mentioned, until November 13, 1960.

His petition for a writ of habeas corpus in the Supreme Court of Michigan was denied on June 17, 1958. Petition for writ of certiorari to the Supreme Court of the United States was denied on October 20, 1958. 358 U.S. 868, 79 S.Ct. 102, 3 L.Ed.2d 101. Upon denial of petition for writ of habeas corpus in the District Court, this Court issued a certificate of probable cause, permitted an appeal in forma pauperis and appointed counsel to represent the appellant.

Upon these facts counsel for the appellant presents two questions. One, that Thompson was illegally taken back to Michigan through extradition proceedings and two, that under any circumstances Michigan was forever barred from prosecuting him after it surrendered him to Illinois with the robbery charge pending.

The appellant, who represented himself in the District Court, through his concessions in his answer to the respondent's motion to dismiss, poses only the second question. He accepts the law of the case of Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 and the rule announced in Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421. He concedes that there is no issue as to the manner of his return to Michigan after his acquittal in Illinois.

Assuming that the appellant was subject to trial in Michigan on the armed-robbery charge, we will first discuss his return to that state.

In the Whittington case, 34 Cal.App. 344, 167 P. 404, cited on behalf of the appellant, Whittington, while in the custody of Texas authorities on a criminal charge of that state, was surrendered to California on a charge of murder, through extradition proceedings. The murder charge was not pressed in California or it was dismissed and the Texas authorities sought to have him returned to Texas by extradition to face the charge that was pending at the time he was turned over to California. The governor of California issued a warrant. *Whittington applied for a writ of habeas corpus in California.* His application was sustained. The court held that having been taken to California against his will, it could not be said that he was a fugitive from justice within the meaning of section 2 of Article IV of the Constitution of the United States.

■ While the rule announced in this case has substantial support, it was said in Moulthrope v. Matus, hereinafter cited, that it is not generally followed. The facts of appellant's case are different as he well recognized. At the time of the appellant's trial for armed-robbery in Michigan, he was within the jurisdiction of the court. This Court will not inquire into the manner of procedure by which he was brought into the jurisdiction of the trial court. It makes no difference whether it was by force or by faulty or incomplete extradition proceedings.

In the view we take of this case, the alleged misrepresentation in the affidavit is not material. We do not condone a false statement intentionally made but this could have been simply an error and we do not condemn without knowing.

■■ In Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), the Court said, at page 522, 72 S.Ct. at page 511: "This Court has never departed from the rule announced in Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will."

In this case the defendant charged that, "while he was living in Chicago, Michigan officers forcibly seized, handcuffed, blackjacked and took him to Michigan."

In Ker v. Illinois, 119 U.S. 436, the court said, at page 441, 7 S.Ct. 225, at page 228, 30 L.Ed. 421: "It is sufficient to say, in regard to that part of this case, that when the governor of one State voluntarily surrenders a fugitive from the justice of another State to answer for his alleged offences, *it is hardly a proper subject of inquiry on the trial of the case to examine into the details of the proceedings by which the demand was made by the one State and the manner in which it was responded to by the other.* The case does not stand, when the party is in court and required to plead to an indictment, as it would have stood upon a writ of *habeas corpus* in California, or in

any States through which he was carried in the progress of his extradition, to test the authority by which he was held; and we can see, in the mere fact that the papers under which he was taken into custody in California were prepared and ready for him on his arrival from Peru, no sufficient reason for an abatement of the indictment against him in Cook County, or why he should be discharged from custody without a trial." (Emphasis added.) See also Cook v. Hart, 146 U.S. 183, 13 S.Ct. 40, 36 L.Ed. 934; Lascelles v. Georgia, 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 549; Pettibone v. Nichols, 203 U.S. 192, 27 S.Ct. 111, 51 L.Ed. 148.

The State of Illinois has adopted the Uniform Extradition Act. By section 27 of chapter 60, Smith-Hurd Illinois Statutes, Annotated, it is provided that one arrested on an extradition warrant issued by an asylum state must be taken before a judge of the circuit court of the county wherein he is arrested, who shall inform him of his rights. This section further provides, "and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus." Had such an action been brought in Illinois, the appellant would have been within the ambit of the Whittington case above cited.

We find then that the appellant, having been returned to Michigan, was subject to trial there, unless as claimed by both him and his counsel, Michigan was forever barred from prosecution because it did not prosecute him before turning him over to Illinois or at least by not reserving that right.

No authority has been cited to us nor have we been able to find any that would support the claim that the appellant could not be held for the parole violation and tried on the armed-robbery charge which were pending in Michigan at the time the Michigan governor surrendered him to Illinois.

The public has an interest in criminal prosecutions and they are made for the protection of the citizens of a state and in order that there may be orderly government under law. A criminal offense charged against an individual is a violation of the rights of the people and it is not extinguished or terminated except by the offender having been once put in jeopardy. In some states, as in Michigan, there is a statute of limitations governing prosecution for crime. Section 28.964 M.S.A., Comp.Laws Mich.1948, § 767.24. Prosecution of the appellant was not barred by this statute.

Ex parte Youstler, in the Criminal Court of Appeals of Oklahoma, 40 Okl.Cr. 273, 268 P. 323, is very much in point. This would be a stronger case for the prisoner than the case at bar. Here the prisoner had been tried and convicted in Oklahoma and while on bond pending appeal he was extradited to Missouri. He was convicted in Missouri, served time there and then returned to Oklahoma by extradition where he was confined on his conviction which in the meantime had been affirmed. The court said at page 324: "The honoring of the requisition from the state of Missouri by the Governor of this state is not a pardon. As stated, it is a waiver of the jurisdiction of the state over the person of petitioner, and a waiver of the right of the state to demand his return to the state. It does not satisfy the judgment of conviction; This can be satisfied only by serving of the sentence imposed or by its remission by pardon. The expiration of time without imprisonent is not an execution of the sentence. (Citations)

"Since the rendering of petitioner to the authorities of the state of Missouri was a waiver of the right of this state to return the petitioner to this state after his release there, he could have successfully resisted any attempt by the authorities of this state to return him here. But, if he be brought into this state or return and be apprehended so that the jurisdiction of his person is again obtained, he may be required to satisfy the judgment of conviction against him. Where there is a valid conviction and the

court has jurisdiction of the person, this Court will not inquire by habeas corpus into the manner by which jurisdiction was obtained."

In State of Oregon v. Swain, 147 Or. 207, 31 P.2d 745, 93 A.L.R. 921, an accused was surrendered to California by the governor of Oregon, while charges were pending in Oregon against him. He was prosecuted in California and served time there. When he returned to Oregon he was prosecuted there on the charge that was pending at the time of his removal to California. The accused's motion to dismiss on the ground that Oregon had waived the right to prosecute was denied. This ruling was affirmed by the Supreme Court of Oregon. The court commented that since the charge had only been referred to the Grand Jury and no indictment had been returned, the accused had not been placed in jeopardy. An indictment does not place one in jeopardy and we think the ruling would have been the same had there been an indictment as in the case at bar. 22 C.J.S. Criminal Law § 241, p. 640.

See also United States ex rel. Moulthrope v. Matus, 218 F.2d 466, C.A. 2, cert. denied 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. § 1357. Under the facts of this case the appellant could not have successfully prosecuted an action for habeas corpus in Illinois. This is contra the Whittington case above cited.

Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544, cited by appellant and his counsel has no application to the facts of the case at bar. It was held here that where an accused was in Georgia and allegedly committed a crime both in New York and in Georgia, the latter state could waive its prosecution and transfer the accused to New York. This is merely a waiver of immediate prosecution and does not get to the point of whether he could later be extradited back to Georgia for prosecution on the pending charge. See also State ex rel. Brown v. Grosch, 177 Tenn. 619, 152 S.W.2d 239, (Tennessee); In re Hess, 5 Kan.App. 763, 48 P. 596; People v. Klinger, 319 Ill. 275, 149 N.E. 799, 42 A.L.R. 581. It

is not the tenor of these decisions that such waiver is tantamount to a pardon or that the surrendering state loses jurisdiction of the accused should he return to the state.

There is a distinction between the facts of the case at bar and those cases where the prisoner was surrendered to a sister state while serving a sentence after conviction. A release by the governor under such circumstances is sometimes considered to be in effect a pardon of the remainder of the sentence. Ex parte Guy, 41 Okl.Cr. 1, 269 P. 782. In In re Jones, 154 Kan. 589, 121 P.2d 219, under similar facts it was held to be a commutation of sentence.

The recent case of Jones v. Rayborn, 346 S.W.2d 743 (Kentucky), falls in the same category as the above two cases. This case was previously before our Court and reported at 282 F.2d 410 and 284 F.2d 678. In this case the prisoner, while serving a sentence in Kentucky, was transferred to a federal prison to serve a sentence from a federal court. After release from the federal prison, he was returned to the Kentucky state prison. The Kentucky Court of Appeals held that the state had waived the right to require further service of his sentence.

The surrender to another state while the prisoner is serving a sentence is equivalent to a pardon. We think implied pardon or commutation of sentence is more descriptive of the legal effect of such a surrender than waiver of jurisdiction. In such a case the judgment of conviction is satisfied and there is no continuing jurisdiction. There is ample justification for such final release as stated by the court in the Rayborn case.

People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E.2d 517, 147 A.L.R. 935, presented a similar state of facts. In this case there was an attempted parole which the court held in reality to be fictitious and not valid. The prisoner was transferred to another jurisdiction while imprisoned. The court held that he could not be compelled to serve the rest of his sentence in Illinois. The situation would have been different, the court said, if

the prisoner had actually been free on parole at the time he was surrendered to the other state. See United States ex rel. Hunke v. Ragan, Warden, 158 F.2d 644 (C.A. 7).

Finally, counsel for appellant says that he could not be returned unless Michigan had made a reservation to that effect. Michigan has also adopted the Uniform Extradition Act. Section 5 of that Act, (28.1285(5) M.S.A., Comp.Laws Mich. 1948, § 780.5) provides: "When it is desired to have returned to this state a person charged in this state with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the governor of this state may agree with the executive authority of such other state for the extradiction of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this state as soon as the prosecution in this state is terminated."

This is no mandatory requirement. As pointed out heretofore, the courts in the receiving state need not inquire how the accused came into its jurisdiction. The purpose of this clause is to prevent such a situation as happened in the Whittington case in California. In that case, had Texas made such a reservation, Whittington could not have availed himself of habeas corpus in California, except as such procedure might draw in question the validity of that particular clause. See Ex parte Guy, 41 Okl. Cr. 1, 269 P. 782.

Counsel for appellant has cited Rau et al., Plaintiffs, v. McCorkle, Warden, etc., defendant, 45 N.J.Super. 191, 131 A.2d 895. This is a decision of the Superior Court of New Jersey, Law Division, (Criminal).

This case has no application to the facts of the case at bar. The plaintiffs were surrendered by New Jersey to New York with an agreement by the respective governors that they would be returned to New Jersey when New York was through with them. After their return to New Jersey, they sought release by habeas corpus and challenged the validity of the agreement. The court held that their constitutional rights, under the fourteenth amendment, had not been violated and dismissed their petition.

 At the time of the appellant's trial for armed robbery, in Oakland County, Michigan, he was within the jurisdiction of the court and the charge was still pending. It had not been extinguished or terminated, there was no waiver of jurisdiction by reason of the former extradition to Illinois and there could have been no implied pardon or commutation of a sentence which had not yet been imposed.

We conclude that the judgment of the District Court should be and it is hereby affirmed.