BYRD, Appellant,

v.

BRIGANO, Warden, Appellee.

[Cite as *Byrd v. Brigano* (1993), 91 Ohio App.3d 721.]

Court of Appeals of Ohio,
Warren County.

No. CA93–05–045.

Decided Nov. 29, 1993.

*John Byrd, pro se.*

▉▉▉▉▉▉▉▉▉▉▉▉▉

*Lee Fisher*, Attorney General, and *Donald G. Keyser*, Assistant Attorney General, for appellee.

WALSH, Judge.

Petitioner-appellant, John Byrd, was sentenced to a term of one to twenty years in Hamilton County case No. B73–2159 for auto theft on January 2, 1974. On November 24, 1976, he was sentenced to a term of two to five years for breaking and entering in Hamilton County case No. B76–1713. Appellant subsequently was paroled and his parole was revoked several times. Appellant's most recent parole began June 4, 1984, and supervision of appellant was transferred to Tennessee. On February 19, 1986, appellant was declared a parole violator at large ("PVAL"). Subsequently, appellant was arrested several times, including an arrest on July 19, 1987 when Tennessee authorities arrested him on a fugitive warrant and contacted authorities in Ohio. The Tennessee authorities were informed by the Ohio Adult Parole Authority ("OAPA") that appellant was not wanted in Ohio, and appellant was released after seventy-two hours.

On March 31, 1992, however, appellant pled guilty to a domestic violence assault offense in Hamilton County, Tennessee, and the OAPA initiated proceedings to have him returned to Ohio. On April 5, 1992, appellant was returned to Ohio as a PVAL, and his parole was revoked after a probable cause hearing held on July 17, 1992. On February 17, 1993, appellant filed his petition for a writ of habeas corpus in the Warren County Court of Common Pleas, which petition was followed by a motion to dismiss filed by respondent-appellee, Anthony Brigano. The trial court granted appellee's motion to dismiss on May 5, 1993 and this appeal followed.

The essence of the argument appellant makes in the two assignments of error he has submitted for review is that OAPA failed to proceed with reasonable diligence to issue and execute a warrant once it was aware of his 1986 parole violation. OAPA declared appellant a PVAL in February 1986. Appellant alleges that the Tennessee authorities contacted OAPA in July 1987, after arresting him on a fugitive warrant. (There is nothing in the record to support this information, but for purposes of this decision, it is not necessary to infer that it is correct or incorrect.) Appellant claims OAPA had an affirmative duty at that time to act with reasonable diligence to revoke his parole. Appellant argues that OAPA's failure to do so resulted in a waiver of the violation and loss of jurisdiction. Appellant contends that OAPA was accordingly without jurisdiction to have him returned to Ohio based upon his March 1992 parole violation. By the dismissal of his habeas corpus petition, appellant claims he has been denied due process.

There is legal support for a part of appellant's argument. See, *e.g., Greene v. Michigan Dept. of Corrections* (C.A.6, 1964), 339 F.2d 139 ("*Greene II* "); *Greene v. Michigan Dept. of Corrections* (C.A.6, 1963), 315 F.2d 546 ("*Greene I* "); *United States ex rel. Howard v. Ragen* (N.D.Illinois 1945), 59 F.Supp. 374; *Flenoy v. Ohio Adult Parole Auth.* (1990), 56 Ohio St.3d 131, 134, 564 N.E.2d 1060, 1063–1064; *Hamilton v. Keiter* (1968), 16 Ohio Misc. 260, 264, 45 O.O.2d 285, 287–288, 241 N.E.2d 296, 299.

The facts in *Flenoy* and *Keiter* are dissimilar to the case at bar, and they simply reiterate that reasonable diligence in the issuance and execution of a warrant for a parolee's arrest is necessary. The other cases, however, bear more closely upon the issue at hand. In the *Greene* cases, the petitioner alleged that the state of Michigan had lost jurisdiction over his person because of a nine-year delay between the issuance of a warrant for parole violation in 1950 and its execution in 1959. The Sixth Circuit Court of Appeals held in *Greene I* that a hearing should have been granted to determine whether Michigan had proceeded with reasonable diligence to issue and execute a warrant for the parolee's arrest. *Id.* at 547. The court so held because petitioner had raised an issue of fact as to the reasonable diligence of the state. *Id.* On remand, the district court held for the petitioner. The Sixth Circuit Court of Appeals then reversed and remanded with directions to dismiss the petition because the state of Michigan had proved that it did not know for certain where the petitioner was during the nine-year lapse. *Greene II* at 141.

On their face, the *Greene* cases seem to indicate that appellant at least should be granted a hearing to determine if Ohio was reasonably diligent in its issuance and execution of the 1986 PVAL warrant. The *Greene* cases, however, can be distinguished. In those cases, the 1959 warrant was not based upon a fresh violation; rather, it was a re-issuance of the 1950 warrant. In the case at bar, the state of Ohio did not ask for petitioner's return on the basis of the 1986 PVAL warrant; it requested his return on the basis of the 1992 parole violation.

*United States ex rel. Howard v. Ragen* can be similarly distinguished. In *Ragen,* Illinois authorities knew of the petitioner's incarceration in other states and refused to take action. When they did take action in 1944, they executed a 1929 warrant. In the case now before us, appellant was convicted in Tennessee on March 31, 1992. He was returned to Ohio and subsequently his parole probable cause hearing was held on July 17, 1992. The impetus for the revocation was a fresh violation of his parole. Therefore, appellant was given the necessary due process protections afforded by the Constitution.

Appellant's constitutional analysis is thus misplaced. He was returned to Ohio because of a fresh violation of his parole. Appellant's contention that jurisdiction over his person was lost is without merit. Only if Ohio was attempting to hold

appellant on the basis of the 1986 PVAL warrant would appellant be entitled to a hearing to determine if Ohio acted with reasonable diligence and thus retained jurisdiction.

As the state notes, Ohio had no affirmative duty to pursue appellant as a parole violator or return him to custody. Ohio law specifically states that a parolee remains in the legal custody of the Department of Rehabilitation and Corrections until a final release is granted. *Whitaker v. Maxwell* (1966), 6 Ohio St.2d 202, 35 O.O.2d 313, 217 N.E.2d 223; R.C. 2967.01(E). Appellant has not asserted or provided any proof of receipt of a certificate of final release pursuant to R.C. 2967.16, and, therefore, is still under the legal custody of the Ohio authorities.

Finally, as the trial court held, there was no unreasonable delay between appellant's assault conviction on March 31, 1992 and the parole probable cause hearing on July 17, 1992. Thus, there was no denial of due process. Appellant's assignments of error are overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JONES, P.J., and WILLIAM W. YOUNG, J., concur.